UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x   Index No.: 05cv 2699
JOHN F. MARCHISOTTO,

                      **Plaintiff,**                              **VERIFIED**
                                                                     **COMPLAINT**

    **-against-**

**THE NEW YORK CITY POLICE
DEPARTMENT, THE CITY OF
NEW YORK and CARLA HOLLYWOOD,**          **Jury Trial
                                                                             Requested**

                              **Defendants.**
------------------------------------------------------------------------x

    Plaintiff, John F. Marchisotto, complaining of Defendants respectfully alleges as follows:

## INTRODUCTION

    1. This is an action for discrimination based on gender in the terms, conditions, and privileges of employment, and for retaliation for actions, protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., the Civil Rights Act of 1991 ("Title VII") and by the New York City Human Rights Law, Administrative Code §§ 8-101 et seq. (the "Code").

    2. Plaintiff also seeks costs and attorneys' fees authorized by 42 U.S.C. §§ 2000e- 5(k) and the Code § 8-502(f) and other relevant statutes.

## JURISDICTION

    3. The jurisdiction of the Court over this controversy as to enforcement of the provisions of the Civil Rights Act of 1964 as amended is based upon 42 U.S.C. § 2000e- 5(k).

    4. Supplemental jurisdiction of the Court over the claims based on the Code is based on 28 U.S.C. § 1367.

## VENUE

5. The unlawful employment practices alleged below were committed within the Southern District of New York. Accordingly, venue lies within the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

## EXHAUSTION OF REMEDIES

6. Prior to filing this Complaint, Plaintiff timely filed a written charge under oath asserting sexual harassment and retaliation under Title VII with the United States Equal Employment Opportunity Commission (the "EEOC") within 300 calendar days of the date on which the last discriminatory act allegedly therein occurred, which was assigned Charge No. 160-2004-01818.

7. Plaintiff received a Notice of Rights to Sue letter, for the Defendant, The New York City Police Department ("NYPD"), from the U.S. Department of Justice dated February 15, 2005 (a copy is attached hereto as Exhibit A).

8. In conformance with 29 U.S.C. § 626(d), Plaintiff now files this Complaint within 90 days after the Plaintiff received the Notice of Right to Sue from the U.S. Department of Justice.

## PARTIES

9. Plaintiff is a Caucasian male born on March 31, 1970. At all relevant times, the Plaintiff was an "employee" covered by Title VII and a "person" within the meaning of the Code.

10. Defendant NYPD is located at One Police Plaza, New York, New York 10007. At all relevant times, NYPD was an "employer" within the meaning of Title VII.

11. At all relevant times, NYPD was an "employer" within the meaning of the Code §§ 8-101 et seq.

12. Defendant City of New York is located at One Centre Street, Room 1200, New York, New York 10007-2341.

13. Defendant Carla Hollywood ("Hollywood") is a Lieutenant in the NYPD and is Plaintiff's direct supervisor.

## STATEMENT OF FACTS

14. On or about June 30, 1992, Plaintiff began his employment with the NYPD as a Police Officer. On or about November 20, 2001, Plaintiff was promoted to the position of Sergeant.

15. On or about March 2003, Plaintiff was assigned to a video patrol enforcement unit in the area of the Stapleton Housing Project in Staten Island ("Viper 5"), as a supervisor during the 7:00 a.m. to 3:00 p.m. shift.

16. On or about October 28, 2003, Hollywood commenced her assignment at Viper 5 and Plaintiff met her for the first time on the morning of that day.

17. At approximately 1:00 p.m. on Hollywood's first day at Viper 5, Hollywood sat next to Plaintiff while Plaintiff was at his desk and attempted to get inappropriately personal with Plaintiff. For example, Hollywood asked Plaintiff if he was married. After Plaintiff responded, "Yes," Hollywood asked, "Happily?" Plaintiff replied that he was happily married and had a beautiful wife and baby. In response, Hollywood commented, "Well, nobody married is ever happy." Plaintiff immediately told Hollywood that he does not wish to discuss his personal life with her.

18. Detective Joe Pascone and Police Officer John Mahon were at the other side of the office when this occurred. Plaintiff told them that Hollywood had been asking him personal questions.

19. The next day, at approximately 7 a.m., Hollywood visited Plaintiff again and, while leaning over his desk, again asked Plaintiff if he was happily married. She also asked Plaintiff where he lived and what he did when he is not with his wife. Hollywood then brushed her chest against Plaintiff's back. When Hollywood brushed up against Plaintiff, he was startled and was forced to move his seat away from her. Plaintiff was made to feel very uncomfortable by this.

20. Detective Pascone and Police Officer Steven Biencowski were at the other side of the office at this time. Plaintiff again told them that Hollywood had been asking him personal and inappropriate questions.

21. During the period from on or about October 28, 2003, through on or about November 6, 2003, Plaintiff received an unusual number of telephone calls at work that after he would answer, the other party to the call would hang up. Plaintiff also received approximately six calls a day from Hollywood, while she was both on and off-duty. During these telephone calls, Hollywood had nothing to say that was business-related. Instead, she would say things that included but were not limited to, "I just wanted to hear your voice on the phone," and, "I just wanted to see if you were there."

22. Plaintiff told Hollywood he was offended and that she was making him feel uncomfortable, but she continued to make the inappropriate telephone calls anyway.

23. After Police Officers Mahon, Lisa Assante, Victor Wilson and Detective Pascone overheard some of these telephone calls, Plaintiff explained to them that they had been made to annoy and harass him.

24. On or about February 5, 2004, Plaintiff complained about the telephone incidents in a letter that was sent to Chief Jaffe, Chief of Housing, and to Captain McDermott, Internal Affairs Bureau ("IAB'). Plaintiff stated that Hollywood called to speak to him at least six times a day and that when he would pick up the phone she had nothing at all to say. Plaintiff also stated that Hollywood told him that she just wanted to hear Plaintiff's voice and to see if he was there, that he was being harassed by Hollywood, and the unusual amount of telephone hang-ups which had not occurred prior to Hollywood being assigned to Viper 5.

25. On or about November 4, 2003, after Plaintiff's father had suffered a massive heart attack, Plaintiff changed his post so that he could visit his father in the hospital. Plaintiff documented this event in the command log and informed his personnel what was going on.

26. Hollywood, in a very insensitive manner, made an unusually big deal about Plaintiff changing his post.

27. On November 6, 2003, Sergeant Andrew Napolitano reported the hang-ups and the annoying phone calls that Plaintiff was receiving to Lieutenant Danny Bahno, Integrity Control Officer for Staten Island Housing, and to Captain Richard Gutch, Commanding Officer of Housing. This was also reported to Chief Jaffe and Captain McDermott, IAB, in a letter dated February 5, 2004.

28. Shortly after this complaint, the telephone hang-ups stopped, but the harassing telephone calls continued.

29. On or about January 6, 2004, Plaintiff learned that Hollywood made Sergeant Napolitano change his evaluation for a police officer because the officer had not smiled at her and was not friendly enough with her.  After Plaintiff learned this, Hollywood called him and asked him to change an evaluation that he had prepared for an officer who reports to him. Plaintiff refused to do this and referred Hollywood to the Administrative Guide Procedure for the proper protocol on an issue such as this.  Hollywood then issued a Command Discipline against Plaintiff.

30. Plaintiff reported this incident in a letter to Chief Jaffe and to Captain McDermott, IAB, under log number 04-00624.

31. On or about January 6, 2004, Hollywood, while off-duty, made numerous calls in an attempt to contact Plaintiff.  Police Officer Assante informed Hollywood that Plaintiff had gone to the Union office.  Plaintiff was told by Police Officer Assante that Hollywood was very persistent in her efforts to contact Plaintiff and that she appeared to be jealous.

32. On or about January 7, 2004, Plaintiff was written up by Hollywood for going to the Union office while Plaintiff was on-duty, without having informed a superior officer.  Consistent with standard practice, Plaintiff had noted in the command log that he had gone to the Union office.  This disciplinary action was a departure from standard practice.

33. On or about February 4, 2004, Plaintiff was evaluated by Hollywood.  It was a departure from normal procedures for her to evaluate Plaintiff because he had only been under her supervision for forty-five days in that rating year.  In Hollywood's evaluation of Plaintiff, she

stated that, "I met with the increased level of supervision with resistance." Upon information and belief, this criticism was a direct response of Plaintiff's refusal to accede to Hollywood's sexual advances.

     34. On or about February 12, 2004, Hollywood approached Plaintiff while he was in his office and told him that his evaluation did not have to go the way it was going and that she could still make it right. Hollywood massaged Plaintiff's neck while saying this. Plaintiff felt very uncomfortable and told her that he was feeling uncomfortable and that her sexual advances were not welcome. Nevertheless, Hollywood persisted in asking Plaintiff what he was doing for St. Valentine's Day. Before Plaintiff could answer, Hollywood took out a bottle of strawberry lotion and said that she was going to have a great St. Valentine's Day. She then put her hands on Plaintiff's shoulders and told him that she wanted to rub some of the lotion on his shoulders. Plaintiff again told her that he was happily married and that her sexual advances were offensive. Hollywood left the room in a rage after Plaintiff rejected her sexual advance.

     35. Upon information and belief, Captain Gutch is in possession of a videotape which shows Hollywood storming out of Plaintiff's office in a rage.

     36. Upon information and belief, after this incident, Hollywood made it known to Sergeant Napolitano, Sergeant Vincent Rode and Police Officer Jimmy D'Amora that she wanted them to do anything they could to ruin Plaintiff's reputation and career.

     37. On or about February 17, 2004, Sergeant Napolitano deliberately took a statement that Plaintiff had made, about bullet marks in a chart that Plaintiff had made during the course of a

command log audit, and misreported it as a statement that Plaintiff had "bullets" for the Captain. Hollywood used this report for the purpose of commencing an investigation against Plaintiff.

38. Similarly, Sergeant Rode and Police Officer D'Amora reported that Plaintiff had been talking to himself while he was in the bathroom, when Plaintiff had actually been talking to someone on his cell phone.

39. On or about March 3, 2004, without any explanation, Plaintiff was *de facto* demoted by Captain Gutch to a non-supervisory position and transferred to a room that is only used by police officers for the purpose of eating. Plaintiff has no job responsibilities following his retaliatory and degrading demotion. Upon information and belief, nobody has ever been assigned to this room before.

40. The *de facto* demotion and reassignment has caused Plaintiff a great deal of anxiety and distress. As a result, Plaintiff was admitted to a hospital because of an anxiety attack and chest pains. Plaintiff is currently under treatment for anxiety, amongst other conditions, and has been prescribed numerous medications for his conditions, including but not limited to Lotrel for the purpose of reducing anxiety and lowering his blood pressure. Plaintiff has never had high blood pressure before.

41. Additionally, subsequent to Plaintiff's complaints concerning Hollywood's harassment, Plaintiff's applications to be promoted to Lieutenant have all been denied despite Plaintiff exceeding all of the requirements

42. As further acts of retaliation, Plaintiff has received negative performance evaluations.

43. Plaintiff is regularly receiving treatment by a psychiatrist and a psychologist for severe emotional distress that is caused by the ongoing harassment and retaliation.

44. At all relevant times herein, Plaintiff has performed his job duties in a satisfactory manner.

45. As a direct and proximate consequence of Defendants' intentional and unlawful discriminatory employment policies and practices, Plaintiff has suffered loss of income, including past and future salary increases and fringe benefits, severe mental and emotional harm, and other nonpecuniary losses.

46. Defendants knew or should have known of the harasment and failed to take adequate measures to prevent or stop it.

47. Defendants engaged in a pattern and practice of discrimination by failing to prevent and promptly correct the discriminatory treatment.

### AS AND FOR THE FIRST CLAIM:

DISCRIMINATION BASED ON GENDER IN VIOLATION OF TITLE VII

### AGAINST DEFENDANTS NYPD AND THE CITY OF NEW YORK

48. Plaintiff hereby realleges and incorporates by reference, as if fully set forth herein, paragraphs 1-47 above.

49. Plaintiff was forced to endure discrimination based on his gender in violation of Title VII.

50. NYPD and The City of New York have engaged in unlawful employment practices in violation of Title VII.

51. The unlawful employment practices complained of above were intentional and were performed with malice and reckless indifference to the Plaintiff's federally protected rights.

52. As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

53. Defendants NYPD and The City of New York are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorneys' fees, in a sum to be awarded by Court and jury.

## AS AND FOR THE SECOND CLAIM:
## DISCRIMINATION BASED ON GENDER IN VIOLATION OF THE CODE
## AGAINST ALL DEFENDANTS

54. Plaintiff hereby realleges and incorporates by reference, as if fully set forth herein, paragraphs 1-53 above.

55. By subjecting the Plaintiff to the unlawful practices and gender discrimination set forth above, defendants have violated Plaintiff's rights under §§ 8-107(1)(a) and 8-107(13)(b)(1) and (b)(2) of the Code.

56. As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent

emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

57. Defendants are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorneys' fees, in a sum to be awarded by Court and jury.

58. Additionally, Defendants' conduct as described herein was willful, malicious and oppressive, and done with a conscious disregard of Plaintiff's rights and well being.

## AS FOR THE THIRD CLAIM:

## DENIAL OF TERMS AND CONDITIONS BASED ON

## GENDER IN VIOLATION OF TITLE VII

## AGAINST DEFENDANTS NYPD AND THE CITY OF NEW YORK

59. Plaintiff re-avers and incorporates by reference all of the allegations of paragraphs 1 through 58 of this Complaint with the same force and effect as if fully set forth herein.

60. Plaintiff was forced to endure discrimination and harassment on the basis of his gender in violation of Title VII.

61. Defendants have engaged in unlawful employment practices in violation of the Title VII.

62. Defendants have discriminated against the Plaintiff on the basis of gender and have denied him equal terms, conditions and privileges of employment, in violation of Title VII.

63. The unlawful practices complained of above were intentional and were performed with malice and reckless indifference to the Plaintiff's rights.

64. As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

65. Defendants are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorneys' fees, in a sum to be awarded by Court and jury.

## AS FOR THE FOURTH CLAIM:

## DENIAL OF TERMS AND CONDITIONS BASED ON

## GENDER IN VIOLATION OF THE CODE

## AGAINST ALL DEFENDANTS

66. Plaintiff re-avers and incorporates by reference all of the allegations of paragraphs 1 through 65 of this Complaint with the same force and effect as if fully set forth herein.

67. Plaintiff was forced to endure discrimination and harassment on the basis of his gender in violation of the Code.

68. Defendants have engaged in unlawful employment practices in violation of the Code.

69. Defendants have discriminated against the Plaintiff on the basis of gender and have denied him equal terms, conditions and privileges of employment, in violation of the Code.

70. The unlawful practices complained of above were intentional and were performed with malice and reckless indifference to the Plaintiff's rights.

71. As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

72. Defendants are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorneys' fees, in a sum to be awarded by Court and jury.

## AS AND FOR THE FIFTH CLAIM:

## RETALIATION IN VIOLATION OF TITLE VII

## AGAINST DEFENDANTS NYPD AND THE CITY OF NEW YORK

73. Plaintiff hereby realleges and incorporates by reference, as if fully set forth herein, paragraphs 1-72 above.

74. In violation of Title VII, Defendant NYPD and The City of New York retaliated against Plaintiff by subjecting him to unwarranted adverse actions in his employment.

75. The unlawful employment practices complained of above were intentional and were performed with malice and reckless indifference to the Plaintiff's federally protected rights.

76. As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

77. Defendants NYPD and The City of New York are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorneys' fees, in a sum to be awarded by Court and jury.

## AS AND FOR THE SIXTH CLAIM:

## RETALIATION IN VIOLATION OF THE CODE

## AGAINST ALL DEFENDANTS

78. Plaintiff hereby realleges and incorporates by reference, as if fully set forth herein, paragraphs 1-77 above.

79. In violation of the Code, Defendants retaliated against Plaintiff by subjecting him to unwarranted adverse actions in her employment.

80. As a proximate result of Defendants' acts and practices described above, Plaintiff suffered and endured, and will continue to suffer and endure, serious and possibly permanent emotional pain, suffering and anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, embarrassment, humiliation, and other damages.

81. Defendants are therefore liable to Plaintiff for compensatory damages, punitive damages, other affirmative relief, costs and attorney's fees, in a sum to be awarded by Court and jury.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff requests judgment against the Defendants as follows:

1) On the First Claim, for discrimination on the basis of gender in violation of Title VII, 42 U.S.C. § 2000e-2(a), against Defendants NYPD and The City of New York in a sum to be awarded

by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees;

    2) On the Second Claim, for discrimination in violation of the Code against all Defendants, in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees;

    3) On the Third Claim, for denial of terms and conditions based on gender in violation of Title VII, 42 U.S.C. § 2000e-2(a), against Defendants NYPD and The City of New York in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees;

    4) On the Fourth Claim, for denial of terms and conditions based on gender in violation of the Code against all Defendants, in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees;

    5) On the Fifth Claim, for retaliation in violation of Title VII, 42 U.S.C. § 2000e-2(a), against Defendants NYPD and The City of New York in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees;

6) On the Sixth Claim, for retaliation in violation of The Code against all Defendants, in a sum to be awarded by a Court and/or a jury for compensatory (including, but not limited to back pay, front pay and emotional distress) and punitive damages, costs and reasonable attorneys' and experts' fees; and

7) For such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

The Plaintiff demands a jury trial of all issues properly triable by a jury.

Dated: March 4, 2005
New York, New York

Respectfully submitted,

_____
Vivek V. Gupta, Esq. (VG 9794)
STUMER WATSON, P.C.
*Attorneys for Plaintiff*
200 Park Avenue South, Suite 1511
New York, New York 10003
Telephone (212) 633-222
Facsimile (212) 691-3642

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x   Index No.:
**JOHN F. MARCHISOTTO,**

                  **Plaintiff,**                      **VERIFICATION**

    -against-

**THE NEW YORK CITY POLICE
DEPARTMENT, and CARLA HOLLYWOOD,**

                  **Defendants.**
-------------------------------------------------------------------------x

STATE OF NEW YORK    )
                               ) ss.:
COUNTY OF NEW YORK  )

    John F. Marchisotto, being duly sworn, deposes and says:

    I am the plaintiff in the above-entitled action.  I have read the foregoing Verified Complaint and know that all of the assertions set forth therein are true and are within my personal knowledge, except as matters alleged on information and belief, and as to those matters, I believe them to be true.

                                                                    _____
                                                                    John Marchisotto

Sworn to before me this
  ____ day of  March, 2005;

_____
Notary Public