UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

JOHN F. MARCHISOTTO,                        :
                                            :
                            Plaintiff,      :
                                            :          OPINION AND ORDER
            - against -                     :
                                            :          05 Civ. 2699 (RLE)
THE CITY OF NEW YORK, et al.,               :
                                            :
                            Defendants.     :

———————————————————————————

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

On March 29, 2005, plaintiff John F. Marchisotto, a former sergeant in the New York

City Police Department, initiated this action against the New York City Police Department, the

City of New York ("the City"), and Carla Hollywood, alleging sexual harassment and retaliation

in employment in violation of Title VII. The case proceeded to trial, and the jury found the City

liable for retaliation against Marchisotto, awarding him $300,000 in compensatory damages.

Currently before the Court are Marchisotto's application for attorneys' fees and costs in

the amount of $156,514.92, and his request for sanctions in the amount of $25,000. For the

reasons that follow, Marchisotto's application for attorneys' fees and costs is **GRANTED, in**

**part, and DENIED, in part.** The City, therefore, **SHALL** pay Marchisotto the amount of

**$21,012** in attorneys' fees. Marchisotto's motion to compel and for sanctions is **DENIED**.

## II. BACKGROUND

### A. Marchisotto's Motion for Attorneys' Fees and Costs

On July 25, 2006, the Parties consented to jurisdiction by the undersigned. Trial

commenced on January 22, 2007. After the close of evidence, the jury found for Defendants on

the harassment claim, but returned a verdict for Marchisotto of $300,000 in compensatory damages for the retaliation claim against the City. The City's post-trial oral motion to overturn the verdict and award was denied. On February 1, 2007, the City renewed its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("FRCP") 50(b), seeking to set aside the verdict finding retaliation. It also sought a new trial on the retaliation charge, or on damages alone, under FRCP 59(a), or in the alternative, for remittitur pursuant to FRCP 59(e) to reduce the jury verdict.

By Memorandum Opinion & Order dated April 11, 2007, the Court denied the City's post-trial motions, and entered judgment for Marchisotto in the amount of $300,000. (Doc. Nos. 31 and 32.) The City appealed this ruling to the Second Circuit. (Doc. No. 33.) By Summary Order dated November 7, 2008,  (issued as mandate on December 1, 2008), the Second Circuit affirmed the April 2007 decision. (Doc. No. 43.) On November 24, 2008, Marchisotto filed the present motion for attorneys' fees and costs. In support of this motion, Marchisotto submitted affirmations from David M. Fish and Vivek V. Gupta, the two attorneys who worked on his case. Each affirmation sets forth the attorney's professional background, hourly billing rate, and contemporaneous time records documenting the number of hours worked on Marchisotto's case. (*See* Affirmation of David M. Fish in Supp. of Att'ys' Fees, ("Fish Affirmation"); Decl. of Vivek V. Gupta in Supp. of Att'ys' Fees, ("Gupta Decl.").)

The City objects to Marchisotto's motion on the basis that it was untimely made under FRCP 54(d)(2)(B), which states that a motion for attorneys' fees and related nontaxable expenses must be filed "no later than 14 days after entry of judgment." (Decl. of Phyllis Calistro in Opp'n to Att'y's Fees ("Calistro Decl.") ¶ 2.) The City argues that "entry of judgment" means after post-

judgment motions are decided by the District Court; therefore, Marchisotto was required to file his motion within fourteen days of April 11, 2007 – the date upon which this Court denied the City's post-trial motions. (*Id.* ¶ 5 (citing *Weyant v. Okst*, 198 F.3d 311, 314-15 (2d Cir. 1999)).) The City further argues that because of Marchisotto's delay in filing his application, it has been prejudiced because it brought an appeal that did not include any argument about attorneys' fees. (*Id.* ¶ 6.) The City asserts that Marchisotto has not demonstrated any excusable neglect for this delay, and urges the Court to deny the motion. (*Id.* ¶ 8.)

Marchisotto's counsel, David M. Fish, replies that Marchisotto's motion is timely because the term "judgment" within the meaning of FRCP 54 (d)(2)(B) is a "judgment that is final and not appealable, and includes an order of settlement." (Fish Reply Aff. ¶ 4, citing 28 U.S.C. § 2412(d)(2)(G).) He reasons that the request for attorneys' fees and costs would have been premature prior to this Court's December 1, 2008 mandate, because this Court's rulings were then pending appeal and no final judgment had been rendered. (*Id.* ¶ 4.) Fish further argues that the motion is timely because Marchisotto also brought his claims under the Administrative Code of the City of New York, which has no deadline for an application for attorneys' fees. (*Id.* ¶ 5, (citing NYC Administrative Code § 8-502).)

Fish urges that, even if the Court were to find the motion untimely, the Court should use its equitable powers to accept Marchisotto's application because it is in the interest of justice, and the City has suffered no prejudice. (*Id.* ¶ 7.) Fish claims that shortly after trial, he repeatedly attempted to resolve the fee dispute with the City's counsel. He notes that counsel refused to engage in discussions, and instead, it commenced its appeal to the Second Circuit. (*Id.* ¶ 10-13.) Fish asserts that it was not because of neglect that he filed for attorneys' fees and costs after the

3

Second Circuit's decision (and not within fourteen days after the resolution of post-trial motions), but because he made " a thoughtful decision . . . to file the instant application at the appropriate time to avoid the time and expense of a fee application that could be rendered moot by a pending appeal, and to avoid the potential filing of a supplemental fee application." (*Id.* ¶ 3.)

**B. Marchisotto's Motion to Compel and for Sanctions**

On March 18, 2009, Marchisotto moved to compel the City to satisfy the $300,000 judgment against it, and for monetary sanctions in the amount of $25,000. Fish explained that after the Second Circuit's mandate was issued on December 1, 2008, he contacted the City's counsel about receiving payment, and was reminded the City had ninety days to pay, but Marchisotto had still not received payment as of March 18, 2009. (David M. Fish's Letter to the Ct., Mar. 18, 2009 at 1.)

The City responded to Marchisotto's motion for sanctions by explaining that a computer system problem had caused the delay; that the payment would be issued no later than March 25, 2009; and that Marchisotto has not been prejudiced because he currently collects a disability pension from the City, and therefore enjoys an income. On April 1, 2009, per the Court's direction, the City submitted an affidavit detailing the computer problem that delayed the payment to Marchisotto, and indicated that the payment had been issued by March 25, 2009.

### III. DISCUSSION

**A. Marchisotto's Application for Fees and Costs**

**1. Legal Standard**

To be timely, a motion for attorneys' fees and related nontaxable expenses[1] must be filed and served no later than fourteen days after the entry of judgment, unless otherwise provided by statute or court order. *See* Fed. R. Civ. P. 54 (d)(2)(B). A "judgment," under the FRCP, is defined to "include[] a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). "The Judicial Code permits appeals only from 'final' decisions of the district court, 28 U.S.C. § 1291, and it is only a 'final judgment' that triggers the fourteen-day filing period set by Rule 54(d)(2)(B)." *Weyant v. Okst*, 198 F.3d 311, 314 (2d Cir. 1999) (citing Fed. R. Civ. P. 54 Advisory Comm. Note (1993)).

Although the timely filing of a post-judgment motion under Rule 50(b), 52(b), or 59 interrupts a judgment's finality, the finality is restored upon the resolution of the last of any post-judgment motions that operated to suspend finality. *Id.* at 314-15. Therefore, "a Rule 54(d)(2)(B) motion is timely if filed no later than 14 days after the resolution of . . . a Rule 50(b), 52(b), or 59 motion." *Id.* at 315. Congress added the fourteen-day deadline to Rule 54(d)(2)(B) in order to "provide notice of the fee motion to the non-movant before the time to appeal expires; . . . encourage a prompt ruling on fees to facilitate a consolidated appeal on both the merits and the attorneys' fee issue; and . . . resolve fee disputes efficiently, 'while the services performed are

---

[1] Under Local Civil Rule 54.1, a request for taxable costs must be filed within thirty days after the entry of final judgment, unless extended by the Court for good cause shown. A party who fails to timely file a request to tax costs is deemed to have waived costs.

freshly in mind." *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 227 (2d Cir. 2004) (citing Fed. R. Civ. P. 54 Advisory Comm. Notes (1993); *Weyant*, 198 F.3d at 315).

While many jurisdictions have local rules that preempt Rule 54 by allowing fee motions thirty or more days after entry of judgment, the Southern District of New York does not have such a rule. *Id.* Nor do "communications with opposing counsel . . . toll FRCP 54 (d)(2)(B)'s deadline." *Fire & Gas. Ins. Conn. v. 2207 7th Ave. Rest. Corp.*, No. 034 Civ. 4739, 2005 WL 2482548, at *1 n.1 (S.D.N.Y. Oct. 6, 2005). Moreover, the Second Circuit has been clear that, "absent a statute or order of the court such as a local rule, [a] district court [is] required to find 'excusable neglect' under Rule 6(b)[(1)(B)] in order to extend the time to move for attorneys' fees after the expiration of Rule 54's fourteen-day deadline." *Tancredi*, 378 F.3d at 227-28 (citing *Crue v. Aiken*, 370 F.3d 668, 680-81 (7th Cir. 2004)).

### 2. Attorneys' Fees Incurred Through Entry of Judgment by Trial Court

The City correctly notes that FRCP 54(a) clearly defines the word "judgment," as used in FRCP 54(d)(2)(B), to mean "a decree and any order from which an appeal lies;" not a final judgment within the meaning of 28 U.S.C. 2412 (d)(2)(G). Thus, the fourteen-day window during which Marchisotto could timely file for attorneys' fees and costs opened on April 11, 2007, upon this Court's resolution of the City's post-trial motions and entry of judgment in favor of Marchisotto. Rather than filing within the time period prescribed by FRCP 54(d)(2)(B), Marchisotto waited until November 24, 2008 – after the Second Circuit had decided the City's appeal on November 7, 2008, and over a year after the filing deadline had passed.

Marchisotto's argument that his motion is timely because he also brought his claims under the Administrative Code of the City of New York, which has no deadline, is unavailing.

The municipal code does not preempt FRCP 54, and Marchisotto's failure to timely file this motion is not remedied by the fact that it might have been timely if filed in another court. Therefore, because there is no applicable statute or local rule that supercedes FRCP 54(d)(2)(B) in this case, the Court must determine whether Marchisotto's delay can be attributed to "excusable neglect."

When determining whether a finding of excusable neglect is warranted, a district court should consider "'(1) [t]he danger of prejudice to the [opposing party], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was in the reasonable control of the movant, and (4) whether the movant acted in good faith.'" *Tancredi*, 378 F.3d at 227 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). "The 'pivotal determinant' of excusable neglect is the reason for the delay in light of the movant's good faith efforts and whether the circumstances were within the movant's reasonable control." *Cardona v. City of New York*, No. 04 Civ. 955 (GEL), 2007 WL 690126, at *3 (S.D.N.Y. Mar. 7, 2007) (citing *Natural Father and Natural Mother of an Adoptive Child v. Tolbert*, 170 F.R.D. 107, 110 (S.D.N.Y. 1997)). "Excusable neglect" is an "elastic concept," that is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Tancredi*, 378 F.3d at 228. The Second Circuit has refused to find excusable neglect in cases where the moving party has failed to provide a valid explanation for its delay. *See id.* (declining to find excusable neglect where "the reason for the delay is entirely unclear"); *Latin America Finance Group Inc. v. Pareja*, No. 04 Civ. 10082 (DLC), 2007 WL 1009506, at *1 (S.D.N.Y. Apr. 2, 2007) (dismissing motion to extend time to file for attorneys' fees, brought under the court's inherent power, as untimely when made nearly

7

three months after expiration of deadline). "An attorney's failure to follow clear and unambiguous procedural rules does not usually constitute excusable neglect . . . ." *Pareja*, 2007 WL 1009506, at *1 (citing *In re Lynch*, 430 F.3d 600, 603-04 (2d Cir. 2005)).

In the instant case, Marchisotto's counsel missed the filing deadline by well over a year. Even though it appears that his counsel acted in good faith, Marchisotto's delay prejudiced the City by preventing it from making any argument about attorneys' fees in its appeal. One of the express purposes of the fourteen-day filing deadline is to ensure that the attorneys' performed services are "freshly in mind." *Cardona*, 2007 WL 690126, at *2 (finding the length of the delay to be significant when the plaintiff filed motion for attorneys' fees approximately ten weeks past the filing deadline).

Fish has made no showing that he has suffered any hardship that prevented him from timely filing the request for attorneys' fees. (*See* Fish Reply Affirmation.) Fish noted that he unsuccessfully attempted to communicate with the City's counsel to resolve the fee dispute outside of court. This strategy did not relieve Marchisotto of his obligation to comply with clear procedural rules, and does not constitute a valid explanation for his neglect. *Fire & Gas. Ins. Con.*, 2005 WL 2482548, at *1; *Cardona*, 2007 WL 690126 at *2 (contact with adversary about attorneys' fees does not excuse delay or toll statutory time limitations). Indeed, the City's failure to respond to counsel's attempts at resolution works against Marchisotto. There was no indication that delaying the motion would result in the issue being resolved. For these reasons, Marchisotto's motion for attorneys' fees incurred through the entry of judgment by this court is **DENIED.**

### 3. Attorneys' Fees Incurred on Appeal to Second Circuit

Included in Marchisotto's fee application are those attorneys' fees he incurred opposing the City's appeal to the Second Circuit. Because this portion of the request was filed on November 24, 2007, prior to the expiration of the fourteen-day filing deadline which began to run on December 1, 2008 (the date of issuance of the Second Circuit's mandate), Marchisotto is entitled to that portion of attorneys' fees relating to the City's appeal. Therefore, Marchisotto's motion for attorneys' fees incurred through the issuance of the Second Circuit's mandate in this case is **GRANTED**.

### 4. Marchisotto's Application for Costs

Marchisotto's application for costs is untimely. Regardless of whether these costs were "related nontaxable expenses" under FRCP 54(d)(2)(A) (required to be filed no later than fourteen days after the entry of judgment) or "taxable costs" under FRCP 54(d)(1) and Local Civil Rule 54.1 (required to be filed within thirty days after the entry of final judgment), Marchisotto's counsel still missed the filing deadline by no small margin. Unlike Marchisotto's application for attorneys' fees, his application for costs relates exclusively to expenses incurred prior to the City's appeal; therefore no portion of the costs was timely filed. Marchisotto's application for costs in the amount of $4,495.92, plus interest, is therefore **DENIED**.

## B. Compensable Attorneys' Fees

### 1. Legal Standard

District courts have traditionally been required to "calculate a lodestar figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate" in order to resolve applications for attorneys' fees. *DLJ Mortgage Capital, Inc. v.*

*Sunset Direct Lending, LLC, et al.*, No. 07 Civ. 1418 (HB) (THK), 2008 WL 4489786, at *9

(S.D.N.Y. Oct. 6, 2008) (quoting *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232

(2d Cir. 2006)). Although there was a "strong presumption" that the lodestar figure was

reasonable, the number could be adjusted in the district court's discretion based on such

considerations as the difficulty of the case or the results obtained. *Id.* (citing *Leblanc-Sternberg v.*

*Fletcher*, 143 F.3d 748, 763-64 (2d. Cir. 1998)). The courts excluded hours that were "excessive,

redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). If fees

were found to be unreasonable, the court had "the discretion simply to deduct a reasonable

percentage of the hours claimed 'as a practical means of trimming fat from a fee application.'"

*Kirsh v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *New York Ass'n for*

*Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

  The reasonable hourly rate is the rate a reasonable, paying client would be willing to pay

to attract competent counsel to effectively litigate her case. *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 193 (2d Cir. 2008) (citing *Lewis v.*

*Coughlin*, 801 F.2d 570, 576 (2d Cir. 1986)). In addition to the lodestar factors, the variables the

district court should consider when determining the reasonable hourly rate include the so-called

"*Johnson* factors," which are: (1) the time and labor required; (2) the novelty and difficulty of the

questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion

of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly

rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or

the circumstances; (8) the amount involved in the case and the results obtained; (9) the

experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar

cases. *Id.* at 186 n.3 (citing *Johnson v. Ga. Highways Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Once the district court has determined the reasonable hourly rate, it should then use that rate "to calculate what can properly be termed the presumptively reasonable fee." *Id.* at 190 (internal quotation marks omitted).

### a. Reasonable Hourly Rate

"[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The "community" is presumed to be the district in which the case is litigated, absent unusual circumstances. *Rozell v. Ross-Holst*, No. 05 Civ. 2936 (JGK) (JCF), 2008 WL 2229842 at *12 (S.D.N.Y. May 29, 2008) (citing *Arbor Hill*, 522 F.3d at 191). A district court should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190.

Fish seeks attorneys' fees at an hourly rate of $400. Fish was Marchisotto's only lawyer during the appeal, and he charged a consistent hourly rate throughout his representation of Marchisotto. (Fish Affirmation ¶ 8-11.) Fish provided evidence beyond the fee application that the fees charged to Marchisotto were the customary hourly rate for his services. *See New York State Nat'l Org. for Women v. Pataki*, No. 93 Civ. 7146 (RLC), 2003 WL 2006608 at *2 (S.D.N.Y. Apr. 30, 2003) (hourly rate of $430 and $400 awarded in civil rights action); *Kuper v. Empire Blue Cross and Blue Shield*, No. 99 Civ. 1190 (JSG) (MHD), 2003 WL 23350111, at *10 (S.D.N.Y. Dec. 18, 2003) ($425 per hour for experienced civil rights lawyer).

Fish characterizes his level of expertise as "highly experienced" in areas of labor law.

11

(Fish Affirmation ¶ 1.) Fish has practiced law in the field of labor and employment law for over

twelve years, and has extensive litigation experience in the areas of civil rights, discrimination,

criminal, and commercial law. (*Id.* ¶ 2). Fish is also the President of the Employee Rights Section

of the American Association for Justice (AAJ) and serves on the National Employment Lawyers

Association's Sexual Harassment Advisory Program. Fish was named a New York Super

Lawyer® in 2007 and 2008.

In addition to the attorney's customary rates, evidence of rates charged in the district may

be found by reference to those rates that have been awarded in other cases in the district. A

review of recent attorneys' fees awards in the Southern District of New York reflects fee awards

surpassing the $400 hourly rate charged by Fish. *See Rozell*, 2008 WL 2229842, at *14

(approved rate of $600 dollars for partner in sexual harassment and retaliation case); *Heng Chan*

*v. Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118 at *3 (S.D.N.Y. May 8,

2007) (finding reasonable that one partner bill at $450); *Silberblatt v. Morgan Stanley*, 524 F.

Supp. 2d 425, 434 (S.D.N.Y. 2007) (finding it reasonable that one partner and an "of counsel"

bill at $550 an hour).

Having considered all of the relevant case-specific variables, the Court determines that

Fish's hourly rate of $400 is reasonable, is the actual rate at which Fish billed Marchisotto, and

falls within a range that has been approved by courts in this district.

### b. Hours Reasonably Expended

Marchisotto seeks a total of $156,514.92 in attorneys' fees. (Pl.'s Mot. for Att'ys' Fees at

3.) His application includes 1) 224.14 hours Fish worked on the merits of the case, at a rate of

$400/hour, accounting for $89,656.00; 2) 16.52 hours Fish worked on the present application for

attorneys' fees and costs, at a rate of $400/hour, accounting for $6,608; and 3)159.3 hours Gupta

worked on the merits of the case, at a rate of $350/hour, accounting for $55,755.00. (*Id.*) Fish was chief trial counsel in this case, and his affidavit describes his engagement in the following litigation tasks on behalf of Marchisotto: finalizing discovery, pretrial preparation, trial, post-trial motion practice, opposition to the City's appeal to the Second Circuit, and the instant fee application. (Fish Affirmation ¶ 15.) The fee application also covers Gupta's work on the case. Gupta represented Marchisotto before the United States Equal Employment Opportunity Commission ("EEOC"), and subsequently in the federal court proceeding from its inception through the completion of discovery. Gupta drafted pleadings, drafted discovery demands and responses, and conducted and defended depositions. (Gupta Decl. ¶ 6-7.)

In this case, Marchisotto is only entitled to compensation for those attorneys' fees he incurred for work counsel performed opposing the City's appeal. Therefore, the Court evaluates for reasonableness only the 52.53 hours of work Fish performed during the appeal. (Notice of Mot. for Att'ys' Fees at ¶ 3). In determining whether counsel's hours were "reasonably expended," *Hensley*, 461 U.S. at 433, a court must evaluate "whether, at the time the work was performed a reasonable attorney would have engaged in similar time expenditures." (*Id.*) Having reviewed counsel's time records, the Court concludes that the 52.53 hours Fish spent opposing the City's appeal to be neither excessive nor duplicative. (*See* Fish Affirmation at Ex. A.) The novelty and difficulty of the questions involved and the level of skill required to competently represent Marchisotto in his opposition to the City's appeal justify the number of hours billed by Fish, particularly because he was chief trial counsel and worked without assistance of additional counsel throughout the appeal process. (*See* Fish Affirmation at ¶ 15.) A reasonable, paying client would not have expected Fish to have spent less time defending a judgment against an

13

appeal. Therefore, Marchisotto's application for attorneys' fees is **GRANTED**, in part, in the amount of **\$21,012**.

## C. Marchisotto's Motion to Compel and for Sanctions

Marchisotto's motion to compel is denied as moot, because the City has since paid the judgment owed. Although Marchisotto was frustrated by the delay in payment occasioned by the City in this case (wherein the payment of the judgment was due no later than March 1, 2009, and not paid until approximately March 25, 2009), he makes no showing of bad faith on the part of the City. The Court finds the affidavits provided by the City in support of its explanation for the delay, which describe technical difficulties with check processing, are sufficient to rebut any suggestion that the City purposefully withheld payment. Accordingly, Marchisotto's motion for monetary sanctions in the amount of \$25,000 is **DENIED**.

## V. CONCLUSION

For the reasons set forth above, Marchisotto's application for attorneys' fees and costs is **GRANTED, in part, and DENIED, in part.** The City, therefore, **SHALL** pay Marchisotto the amount of **\$21,012** in attorneys' fees. Finally, Marchisotto's motion to compel and for sanctions is **DENIED**. The Clerk is directed to close the case.

**SO ORDERED this 27th day of July 2009**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

14